UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____–Civ

LUJEN BRANDS, LLC,
    Plaintiff

vs.

THE SEMINOLE TRIBE OF FLORIDA, INC.,
MICHAEL ULIZIO, CHRIS OSCEOLA and
HARD ROCK CAFÉ INTERNATIONAL (USA), INC.
    Defendants.
_____/

# COMPLAINT

COMES NOW, Lujen Brands, LLC (hereinafter "Lujen" or ""Plaintiff"), by and through the undersigned counsel, and hereby sues The Seminole Tribe of Florida, Inc. (hereinafter "STOFI" or "Defendant"), Michael Ulizio (hereinafter "Ulizio" or "Defendant"),Chris Osceola (hereinafter "Osceola" or "Defendant") and Hard Rock Café International (USA), Inc. (hereinafter may collectively be referenced as "the Defendants"), and alleges as follows:

## INTRODUCTION

In this action, Plaintiff seeks compensatory damages for harm caused by the Defendants' repudiation of an agreement to support and invest in the 20th Anniversary tour and promotion of the American rock band Candlebox, a Lujen Brands client. Plaintiff detrimentally relied on the Letter of Intent executed by STOFI's Chief Financial Officer, Defendant Ulizio, as well as verbal promises and assurances made by Chris Osceola and other members of STOFI's Board. Based upon the Letter of Intent and verbal promises, Plaintiff negotiated in good faith with Defendants; recommended that

1

Candlebox donate collectible items to Defendants; negotiated the appearance of Candlebox at a concert for Defendants at a substantially reduced rate and recommended that Candlebox repurchase rights to a previously released album at significant cost and effort. Despite all of this, Defendants refused to honor the terms of the Letter of Intent and keep their word. As such, Plaintiff seeks compensatory damages for Defendants' willful and wanton tortious conduct.

## PARTIES, JURISDICTION AND VENUE

1. Lujen is a limited liability company, with its principal place of business in Fulton County, Georgia.

2. STOFI is a Section 17 federally chartered corporation under the Indian Reorganization Act, 25 U.S.C. §477, separate and distinct from the Seminole Tribe, with its principal place of business in Hollywood, Florida.

3. Ulizio is a citizen of the State of Florida, over the age of eighteen (18) and at all times material hereto acted in the capacity of Chief Financial Officer of STOFI.

4. Osceola is a citizen of the State of Florida, over the age of eighteen (18) and at all times material hereto acted in the capacity of a STOFI Board Member.

5. Hard Rock Café International (USA), Inc. is a Florida for profit corporation, with its principal address in Orlando, Florida.

6. This Complaint seeks damages in excess of $75,000, exclusive of interest and costs.

7. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

8. This Court has personal jurisdiction over the Defendants because a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of Florida.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

## SUBSTANTIVE FACTUAL ALLEGATIONS

10. Lujen is in the business of managing and marketing musical acts, primarily through its Managing Member, Matt Iudice, Jr.

11. From May 2012 to April 2013, Lujen represented Candlebox, an award winning American rock band that sells multi-platinum albums and has been performing for over twenty years.

12. In April 2012, Candlebox released its fifth studio album, entitled *Love Stories & Other Musings.*

13. In or around July 2012, Iudice was introduced to Defendant Ulizio for the purpose of discussing a myriad of business opportunities involving a 20th Anniversary Candlebox tour and new album.

14. Defendant Ulizio, Osceola and other members of STOFI's Board expressed an interest in promoting and selling the Seminole brand e-cigarettes, as well as bottled water and orange juice, at each venue where Candlebox would perform during the tour.  Lujen agreed to these terms and negotiated with Candlebox, booking agents and promoters to meet these requests.

15. Negotiations began via electronic mail and telephone.

16. On or about January 24, 2013, a meeting was conducted at STOFI headquarters in Hollywood, Florida to reach a deal. In attendance at the

meeting were: Iudice, Defendant Ulizio, Mike Mobile, Brett Diaz and John Denbeck.

17. The agreement was reduced to a written Letter of Intent (hereinafter "LOI"), executed by Ulizio on behalf of STOFI. *See* Exhibit A attached hereto and incorporated herein.

18. Ulizio gave no indication of a lack of authority to execute the LOI or of a need for further approval from the Board of STOFI to finalize the deal.

19. In good faith reliance on the LOI and verbal assurances from Ulizio, Candlebox continued to tour and performed a sold out show at the Boston Hard Rock Hotel on or about February 2, 2013.

20. In advance of the Boston show, in reliance on the promises made by Ulizio, Lujen ordered Candlebox merchandise that would be sold during the upcoming tour on credit.

21. At the Boston Hard Rock concert, in response to a request by STOFI's Board member Osceola, Candlebox donated an autographed collectible guitar to Hard Rock during a presentation by Hard Rock personnel that announced the partnership between Candlebox, STOFI and Hard Rock Cafe International (USA), Inc.

22.  On February 15, 2013, STOFI failed to make its first payment in the amount of $200,000 as agreed in the LOI and verbally confirmed by Ulizio and Osceola.

23. Iudice followed up directly and repeatedly with Ulizio and Osceola, by telephone and email.

24. Ulizio continued to promise Iudice that the funds would be paid.

25. Ulizio indicated and assured Iudice at the January 24, 2013 meeting, that if Candlebox performed at the Seminole Hard Rock Hotel & Casino's *Burgers & Bash* event in Hollywood, Florida- at a substantial discount- it would seal the deal.

26. Lujen agreed that Candlebox would perform for the substantially discounted rate on March 1, 2013.

27. Iudice and Candlebox travelled to Florida for the March 1, 2013 concert.

28. Prior to the performance, Ulizio and Osceola verbally assured Iudice and Candlebox band members that the deal was done and the funds were forthcoming.

29. Lujen and Candlebox believed that Ulizio and Osceola had the authority to bind STOFI and complete the deal.

30. In providing said assurances to Lujen and Candlebox, both Ulizio and Osceola acted outside the scope of their respective positions as Chief Financial Officer and Board Member.

31. On or about February 28, 2013, a press conference was conducted by Hard Rock Café International (USA), Inc. public relations and marketing personnel to promote the Candlebox concert at the Seminole Hard Rock Hotel & Casino in Hollywood, Florida.

32. During the press conference which was attended by STOFI Board Members, Ulizio again verbally confirmed to Iudice that he would wire the entire amount due of $400,000 the week following the concert.

33. Based upon the verbal assurances of Ulizio and Osceola that the promised funds would be paid the week following the concert, Candlebox performed on March 1, 2013 at the Seminole Hard Rock Hotel & Casino's *Burgers & Bash* event in Hollywood, Florida.

34. Hard Rock Café International (USA), Inc. was a third party beneficiary of the concert performance of Lujen Brands client, Candlebox.

35. Ulizio and STOFI's counsel, Marc Solomon (hereinafter "Attorney Solomon") demanded that Candlebox repurchase the rights to the 2012 *Love Sories & Other Musings* album.

36. Iudice advised Candlebox to do so; and after significant effort which required the involvement of the band's legal team, Candlebox negotiated for the repurchase of the rights to *Love Stories & Other Musings* from the record label and distributor. Said repurchase is outside the industry norm.

37. Despite the promises made by Ulizio and Osceola, the assurances of other STOFI Board Members and the LOI, STOFI never wired the promised funds to Lujen and Candlebox.

38. Thereafter, Candlebox fired Lujen as a direct and proximate result of the failure of STOFI to provide the promised funds necessary for their 20th Anniversary tour.

### COUNT ONE- FRAUDULENT MISREPRESENTATION
### (All Defendants)

39. Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1 through 38 as if set forth herein in full.

40. Ulizio intentionally and continuously made false statements to Iudice that STOFI would invest $400,000 in Candlebox's 20th Anniversary Tour.

41. Ulizio intentionally made false statements to Iudice indicating that the deal with STOFI would be done if Candlebox performed at the Seminole Hard Rock Hotel & Casino at a substantial discount.

42. Ulizio intentionally made false statements to Iudice that that the amount due of $400,000 would be wired to Lujen and Candlebox within a week of the March 1, 2013 concert.

43. Said statements were outside the authority of Ulizio as Chief Financial Officer.

44. At all times material hereto, Ulizio represented that he had all requisite authority to act on behalf of STOFI and had obtained such authority by virtue of his position as Chief Financial Officer.

45. Said representations were false and were intentionally made by Ulizio for the sole purpose of deceiving and misleading Lujen and Candlebox so that STOFI and Hard Rock Café International (USA), Inc. could obtain the benefit of Candlebox performing at significantly discounted rates, as well as merchandising and other benefits.

46. Osceola and other members of STOFI's Board intentionally made false statements to Iudice and Candlebox band members that the deal was done and the funds were forthcoming.

47. Said representations were outside the authority of any individual STOFI Board Member.

48. STOFI and Hard Rock Café International (USA), Inc. were aware of Ulizio and Osceola's representations and the LOI, and took no affirmative action to clarify that Ulizio and Osceola did not have the authority to bind STOFI or that Ulizio had limited authority to negotiate with Lujen Brands.

49. Ulizio knew the statements were false when they were made or made the statements knowing that he was without knowledge of their truth or falsity.

50. Osceola and other members of STOFI's Board knew the statements were false when they made them or made the statements knowing that they were without knowledge of their truth or falsity.

51. Ulizio, in making the false statements, intended that Lujen and Candlebox would rely on the false statements.

52. Osceola and other members of STOFI's Board, in making the false statements, intended that Lujen and Candlebox would rely on the false statements.

53. Lujen relied on Ulizio's false statements and advised Candlebox to accept the reduced payment for the March 1, 2013 performance in exchange for STOFI's support and investment in their 20th Anniversary tour.

54. Lujen and Candlebox relied on Ulizio and Osceola's false statements and purchased merchandise for distribution on the tour; donated an autographed collectible guitar to the Hard Rock in Boston and performed a concert in Boston to begin the tour.

55. Iudice and Candlebox relied on Ulizio's false statements and travelled to Florida for the March 1, 2013 concert.

56. Iudice relied upon the false statements of Ulizio, Osceola and other members of STOFI's Board and advised Candlebox to perform the March 1, 2013 concert, which they did to the benefit of STOFI and Hard Rock Café International (USA), Inc.

57. Lujen and Candlebox relied upon the false statements of Ulizio and negotiated the repurchase of the rights to *Love Stories & Other Musings* from the record label and distributor.

58. As a direct and proximate result of the false statements of Ulizio, Osceola and other members of STOFI's Board, Lujen lost the money that it would have been entitled to had the promises been fulfilled, lost future revenue that would have been generated through Lujen's work with Candlebox and suffered substantial harm to its reputation in the industry, particularly among managers and promoters.

WHEREFORE, Lujen demands monetary damages against the Defendants for fraudulent misrepresentation and such other relief this Court deems just and proper.

### COUNT TWO-FRAUD IN THE INDUCEMENT
**(Ulizio, Osceola and STOFI)**

59. Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1 through 38 as if set forth herein in full.

60. Ulizio misrepresented to Lujen and Candlebox that STOFI would invest $400,000 in Candlebox's 20th Anniversary tour.

61. Ulizio misrepresented to Lujen and Candlebox that if Candlebox performed at the Seminole Hard Rock Hotel at a significantly discounted rate – the deal would be done.

62. Ulizio misrepresented to Lujen and Candlebox that the deal was done and he would wire the entire $400,000 amount to Iudice and Candlebox within one week of the March 1, 2013 show.

63. Osceola and other members of STOFI's Board misrepresented to Lujen and Candlebox that the deal was done and the money forthcoming.

64. Ulizio, Osceola and other members of STOFI's Board knew of the misrepresentations or should have known of the statements falsity.

65. Ulizio, Osceola and other members of STOFI's Board intended that the misrepresentations would induce Lujen and Candlebox to rely and act on them.

66. Lujen suffered injury and damages in justifiable reliance on the misrepresentations by Ulizio, Osceola and other members of STOFI's Board.

WHEREFORE, Lujen demands monetary damages against the Defendants for fraud in the inducement and such other relief this Court deems just and proper.

## COUNT THREE-PROMISSORY ESTOPPEL
(Ulizio, Osceola and STOFI)

67. Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1 through 38 as if set forth herein in full.

68. Ulizio made a misrepresentation of a material fact to Lujen by representing that the deal with STOFI would be done if Candlebox performed at the Seminole Hard Rock Hotel & Casino at a significantly reduced rate.

69. Ulizio made a misrepresentation of material fact to Lujen by representing that STOFI would invest $400,000 in Candlebox's 20th Anniversary tour and the funds would be wired within one week of the March 1, 2013 show.

70. Ulizio, Osceola and the members of STOFI's Board made misrepresentations of material facts when they indicated to Lujen and Candlebox that the deal was done and the money forthcoming.

71. Defendants' misrepresentations induced Lujen and Candlebox to accept a discounted rate for the performance; travel to Florida for the March 1, 2013 concert; donate an autographed collectible guitar to Hard Rock in Boston; perform a concert at the Hard Rock in Boston; begin a tour and perform a concert at the Seminole Hard Rock Hotel & Casino in Hollywood, Florida.

72. Lujen has suffered a detriment caused by reliance on Defendants' misrepresentations by losing money it would have mad if the promises had been fulfilled, by losing money it would have made from continued employment with Candlebox, by losing its excellent reputation and position of influence as a band manager and marketer.

WHEREFORE, Lujen demands judgment for damages against the Defendants, and prays for such other relief in equity, which this Court deems just and proper.

## COUNT FOUR-UNJUST ENRICHMENT
**(All Defendants)**

73. Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1 through 38 as if set forth herein in full.

74. Lujen has conferred a benefit on all of the Defendants who have knowledge thereof.

75. All of the Defendants voluntarily accepted and retained the benefit conferred.

76. The circumstances render the Defendants' retention of the benefit inequitable unless all of the Defendants pay to Lujen the value of the benefit.

77. All of the Defendants have been unjustly enriched at the expense of Lujen.

78. Lujen is entitled to damages as a result of the Defendants' unjust enrichment.

WHEREFORE, Lujen demands monetary damages against all of the Defendants for unjust enrichment and such other relief this Court deems just and proper.

### COUNT FIVE-TORTIOUS INTERFERENCE WITH A CONTRACTUAL OR BUSINESS RELATIONSHIP
(All Defendants)

79. Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1 through 38 as if set forth herein in full.

80. A business relationship between Lujen and Candlebox existed at all times material hereto, under which Lujen had legal rights.

81. All of the Defendants had knowledge of the business relationship between Lujen and Candlebox.

82. An intentional and unjustified interference with the business relationship between Lujen and Candlebox by all of the Defendants induced or otherwise caused Candlebox not to perform.

83. Lujen suffered damages as a direct and proximate result of Candlebox's failure to perform.

WHEREFORE, Lujen demands monetary damages against all of the Defendants for tortious interference with a contractual or business relationship and such other relief this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

Dated: March 18, 2014	Respectfully submitted,

	s/ Stefanie C. Moon, Esq.
	Stefanie C. Moon, Esq.
	Fla Bar No. 0074195
	E-mail: scmoon@scmoonlaw.com
	S.C. Moon Law
	1408 S. Andrews Avenue
	Ft. Lauderdale, FL 33316
	Tel: 954.530.7182
	Fax: 954.341.1044